IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| AUDREY R. CALLOWAY, | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. 8:24-cv-0654-PX |
| CITY OF MOUNT RAINIER *et al.*, | * | |
| Defendants. | * | |
|  | *** | |

## MEMORANDUM OPINION

In this discrimination case, Plaintiff Audrey Calloway ("Calloway") accuses her employer, the City of Mount Rainier ("the City"), Mount Ranier Mayor, Celina Benitez ("Benitez"), and City Manager, Kourosh Kamali ("Kamali") (collectively, "Defendants") of pregnancy discrimination, harassment, retaliation and Fair Labor Standards Act violations. ECF No. 1 ¶¶ 31–58. The City answered the Complaint and now moves for summary judgment.[1] ECF No. 19. The issues are fully briefed, and the Court finds no hearing necessary. *See* D. Md. Loc. R. 105.6. For the reasons stated below, the City's motion for summary judgment is GRANTED.

### I.   Background

In 2019, Calloway began working for the City of Mount Rainier Police Department ("the Department") as a private first-class police officer. ECF No. 1 ¶ 9; ECF No. 19-2 at 8:18–22. The

---

[1] Benitez and Kamali also move for dismissal, arguing that they are sued in their official capacities and thus the claims are duplicative of those brought against the City. ECF No. 19-1 at 12. But the claims, sounding solely in Title VII and the FLSA, are not duplicative. Rather, to the extent Calloway intended to sue Benitez and Kamali as individuals for discrimination under Title VII, she cannot. *See Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998). Under the FLSA, however, "an individual may qualify as an employer and face liability under the FLSA." *Roman v. Guapos III, Inc.*, 970 F. Supp. 2d 407, 416 (D. Md. 2013). But for the same reasons articulated *infra* at pp. 7–9, summary judgment on the FLSA claim is granted in favor of Benitez and Kamali.

City quickly promoted her, and by 2021, the City selected Calloway to be sergeant over two male applicants who each had a longer tenure than she. ECF No. 19-2 at 9:8–10:9. As sergeant, she supervised a squad of officers in the field. ECF No. 19-3 ¶ 4.

In late 2021, Calloway advised the Department that she was pregnant. *Id*. Shortly thereafter, Calloway met with the City's Human Resources Director, Cheryl Morris ("Morris"), and the two discussed how Calloway could use leave under Family and Medical Leave Act ("FMLA") after the baby was born. ECF No. 19-6 at 9:1–4. Morris provided the necessary paperwork regarding FMLA parental leave polices, including the federal guidelines that required Calloway and her husband, also a City employee, to share their FMLA leave. ECF No. 19-7; ECF No. 19-6 at 8:10–16. Morris also requested that Calloway provide a medical certification of her pregnancy as required under FMLA regulations. ECF No. 19-7.

As Calloway's pregnancy progressed, she ran into complications. Accordingly, on January 21, 2022, Calloway notified the Department that her treating obstetrician classified the pregnancy as "high-risk" that required Calloway to be placed on "restricted duty," effective immediately and until six weeks after her delivery. *Id*.; ECF No. 19-8. The physician's note specifically required that Calloway's duty "will need to have the following restrictions:

- No duty vest
- No gun belt
- No pursuit
- No lifting over 20lbs
- Desk job until 6 weeks post-partum

ECF No. 19-8.

The Department did not have a position for a sworn police officer who cannot wear a duty vest or gun belt or be subject to the other restrictions that Calloway's doctor had imposed. Nonetheless, the Department, through Chief Linwood Alston ("Alston"), temporarily assigned Calloway to a "modified-duty status" wherein she received the same salary but was placed on

administrative desk duty. ECF No. 19-9. In preparation for the job switch, Alston required Calloway to be screened by another physician to ensure that the selected position would not involve "anything to hurt [Calloway]" and to better "understand [her] restrictions" of the high-risk pregnancy. ECF No. 19-5 at 12:1–10. *See also id*. 13:18–14:6; ECF No. 19-3 ¶ 7 (Alston explaining purpose of examination was to ensure modified-duty was "consistent with her medical provider's request."). During the few days while the results of the examination were pending, the City placed Calloway on paid leave. ECF No. 19-3 ¶ 6.

Calloway started the desk assignment on January 25, 2022. That same day, Alston memorialized the temporary job switch in a letter to Calloway which read:

> The Chief of Police . . . may restrict employees working in temporary-modified duty assignments from wearing a uniform, displaying a badge, carrying a firearm, operating an emergency vehicle, engaging in outside employment, or being otherwise limited in employing their police power. . . . In light of your physician's written opinion that your status is high risk, and for your personal protection, you are directed to wear civilian business professional/casual clothing when reporting for duty. You are to turn in your assigned City of Mount Rainier Police Department vehicle (Unit 75) . . . no later than February 28, 2022. MPCTC[2] will be notified of your assignment to non-officer status (non-active duty) . . . . Upon returning to regular status and completing firearms qualification, your City of Mount Rainier Police Department vehicle (Unit 75) will be returned to you to complete your regular duties . . . . Your duties will be as follows:
>
> - Administrative at the front desk.
> - Answering phones.
> - Assisting the public at the front window.
> - Assisting the Records Manager.
> - Any other assigned administrative tasks.

ECF No. 19-9.

Alston concluded the letter by stating, "Please let me know if you have any questions or concerns." *Id*. That same day, Calloway asked Administrative Lieutenant, Brian Frayer, if she

---

[2] This acronym appears to stand for Maryland Police and Correctional Training Commissions. *See* MARYLAND.GOV, https://mpctc.dpscs.maryland.gov/ (last visited Feb. 20, 2026).

could attend training required as a police officer by Zoom "due to [her] being on standby status." ECF No. 19-20 at 4. Lieutenant Frayer responded "[n]o unfortunately." *Id.*

Calloway signed and dated the modified-duty letter on February 1, 2022. *Id.* Despite the changed responsibilities, Calloway received the same salary. ECF No. 19-3 ¶ 8. Also, Alston permitted Calloway to keep the police vehicle for an additional 30 days so she could secure a personal car. *Id.* ¶ 9.

Calloway worked in this modified-duty status throughout her pregnancy without complaint. *Id.* ¶ 8. Calloway began her leave on August 5, 2022, and delivered the baby on August 20, 2022. *Id.*; ECF No. 19-12. Calloway remained on maternity leave through late October.

During that time, Morris sent Calloway multiple reminders about the need to provide Human Resources with the required certifications and leave paperwork to comply with the FMLA. Calloway never responded. ECF Nos. 19-13; 19-14; 19-15. At some point, however, Calloway was running out of her own leave, so Morris arranged for leave donations from other Department employees. ECF Nos. 19-6 & 19-16. Calloway received 80 hours of donated leave, which required that she submit weekly certifications of her leave status under the FMLA. ECF No. 19-16. Despite repeated reminders, Calloway never submitted the certifications. ECF No. 19-18.

On October 17, 2022, Calloway returned from maternity leave to work without any advance notice to the Department. ECF No. 19-6 at 19:2–15. Because she returned as a sworn law enforcement officer with normal patrol duties, Calloway wore her police uniform, duty vest, and gun belt. ECF No. 19-3 ¶ 11. Calloway also had her own office with a lock where she could pump breast milk in private, and she was allowed to store the milk in the station refrigerator. *Id.* ¶¶ 11–12, 14. Calloway worked under these conditions for three months without complaint. *Id.* ¶ 13.

Meanwhile, Morris continuously reminded Calloway to turn in her FMLA leave forms to no avail. Because Calloway never complied, Morris notified her on January 11, 2023, that Calloway's failure to submit the outstanding forms will result in the City having to "return the donated leave hours to the donors and begin deducting those hours from [Calloway's] paycheck." ECF No. 19-18. *See* ECF No. 19-19 (December 14, 2022, letter from Kamali to Calloway explaining "[t]he City's policy regarding the use of donated leave limits its use to situations in which the receiving employee is suffering from a serious and prolonged medical condition" thus necessitating "a certification from your physician" regarding Calloway's medical condition). The City, however, never deducted any money from Calloway's salary. ECF No. 19-6 at 10:12–14.

The day after Calloway had received the January 11, 2023 email from Morris, Calloway responded by email with a "formal complaint." ECF No. 19-20. In it, Calloway complained about being "hounded about my leave" through "the threat of docking my pay." *Id.* Calloway also complained about "being forced to come back to full duty," "wear a 20-pound gun belt directly on top of incision[3]," and the lack of "allotted lactation rooms." ECF No. 19-20 at 2–3. Accordingly, Calloway told Morris that she filed a complaint with the Equal Employment Opportunity Commission ("EEOC") for "harassment, discrimination and retaliation." ECF No. 19-20 at 2–3.

The formal charge accuses the City of pregnancy harassment by "forcing" Calloway to "obtain a 'second opinion' proving she was pregnant;" making her share FMLA leave with her husband; making her "wear a 20-pound gun belt" after returning from maternity leave; and failing to provide sufficient lactation accommodations. ECF No. 19-23. The EEOC complaint lastly averred that the City had "unlawfully charge[d]" her "$32.50 for fuel" per pay check even though she had not used a police vehicle during her temporary duty. *Id.* The EEOC transferred the Charge

---

[3] Calloway's baby was delivered by cesarean section. ECF No. 19-20.

to the Prince George's County Office of Human Rights, which investigated the allegations and on October 30, 2023, and determined that there was "insufficient evidence to support [Calloway's] allegations that she was subjected to harassment and discriminated against because of her sex (pregnancy)."  ECF No. 19-24 at 5.  On December 4, 2023, the EEOC adopted Prince George's County's conclusion and issued Calloway a right-to-sue letter.  ECF No. 19-25.

Calloway next filed this lawsuit on March 8, 2024.  The Complaint, regrettably, is a jumble of claims.  In Count I, Calloway appears to combine her pregnancy claim with an opaque reference to a violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq*.  ECF No. 1 at 5.  In fairness to Calloway, the Court construes Count I as both a pregnancy discrimination claim brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., as amended; and an FLSA claim aimed at the alleged lack of provision for lactation.  ECF No. 1 ¶¶ 31–39.  In Count II, Calloway combines "retaliation" and "harassment" under Title VII.  *Id.* ¶¶ 40–58.  Again, even though Calloway fails to reference any particular discrimination statute, the Court generously construes the claim as one brought under Title VII.

The City answered the Complaint on April 1, 2024 and denied the allegations.  ECF No. 4.  It now moves for summary judgment.  ECF No. 19.[4]  The Court considers each count separately.

## II.   Standard of Review

Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or

---

[4] In September 2024, while this suit was pending, the City promoted Calloway to the rank of acting patrol lieutenant. Calloway refused the position and was voluntarily returned to the rank of sergeant. ECF No. 19-4.

denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). Importantly, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)). Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is likewise warranted. *Celotex*, 477 U.S. at 322.

### III. Analysis

#### A. FLSA and Title VII Gender/Pregnancy Discrimination (Count I)

Turning first to the FLSA claim, the City contends that the claim fails because Calloway has not alleged the loss of any wages, and even if she had alleged recoverable damages, the City did not violate the FLSA. ECF No. 19-1 at 20. The Complaint makes only the vaguest reference to the FLSA, but the parties seem to agree that the claim must be construed under 29 U.S.C. § 207(r). The Court will follow suit.[5]

---

[5] Effective December 29, 2022, 29 U.S.C. § 207(r) was repealed and replaced by 29 U.S.C. § 218d, and the provision related to damages was amended by 29 U.S.C. § 216, effective April 28, 2023. *See also* U.S. DEP'T OF LABOR, WAGE AND HOUR DIV., *Fact Sheet #73: FLSA Protections for Employees to Pump Breast Milk at Work* (Rev. Dec. 2025) https://www.dol.gov/agencies/whd/fact-sheets/73-flsa-break-time-nursing-mothers (last visited Feb. 16, 2026). The amendment at 29 U.S.C. § 218d is identical in all material respects to § 207(r).

7

Section 207(r) requires that employers accommodate breast-feeding mothers with "(A) a reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has need to express the milk; and (B) a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk." The City primarily argues that no evidence supports that it had failed to provide the accommodations in compliance with § 207(r). When viewing the record most favorably to Calloway, the Court must agree.

As for a reasonable space to "express milk," it is undisputed that Calloway had a private office with a lock on the door. The City rightly contends that no juror could find this accommodation insufficient or unreasonable, and Calloway offers no real argument in response. Nor is there any evidence that the City interfered with whatever time Calloway needed to pump. ECF No. 19-3 ¶ 12.

Likewise, the City allowed Calloway to store her milk in the station refrigerator. ECF No. 19-3 ¶ 13. Nothing in the record suggests the space amounts to an unreasonable provision even though Calloway personally wished the accommodation would have been better. But mere displeasure with the accommodation alone will not suffice. Because no evidence suggests that the City violated § 207(r), the Court grants summary judgment in the City's favor on the FLSA claim.

Next as to the pregnancy discrimination claim, the City argues that no evidence supports that Calloway had suffered any adverse employment action, and even if Calloway had, the evidence indisputably reflects legitimate, nondiscriminatory reasons for the same. ECF No. 19-1 at 14, 16–17. To survive challenge, Calloway must adduce some evidence that the City had discriminated against her because she was pregnant. *DeJarnette v. Corning Inc.*, 133 F.3d 293,

8

297 (4th Cir. 1998). Where, as here, no direct evidence of discrimination exists[6], the Court employs the well-known burden-shifting framework announced in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *Bowling v. Humanim, Inc.*, No. CV JKB-16-3298, 2017 WL 713862, at *2 (D. Md. Feb. 22, 2017). Under this framework, the plaintiff must make a prima facie showing that (1) she belonged to a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated employees who were not a member of her protected class received more favorable treatment. *See White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004). If the plaintiff makes that showing, the burden shifts to the employer to assert a legitimate, nondiscriminatory reason for its conduct. *McDonnell Douglas Corp.*, 411 U.S. at 802, and then the burden shifts back to the plaintiff to show that the stated rationale is a pretext for discrimination. *See Foster v. Summer Vill. Cmty. Ass'n, Inc.*, 520 F. Supp. 3d 734, 742 (D. Md. 2021) (citing *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 852 (4th Cir. 2001)).

The City contends that no evidence gives rise to an inference of an adverse employment action. Calloway's sole retort is that the stripping of her police duties amounts to sufficient adversity for the claim to proceed. ECF No. 21-1 at 23. True, the challenged employment action must result in some "'disadvantageous' change" or worse treatment of a particular employment condition. *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354 (2024) (quoting *Oncale v.*

---

[6] Calloway mistakenly views the City's directive for her to wear civilian clothing during her temporary assignment and Alston's required "second opinion" as evidence of "direct discrimination." ECF No. 21-1. They are not. ECF No. 21-7 at 61:11–17; ECF No. 19-5 at 12:1–10; *id.* at 13:18–14:6; ECF No. 19-3 ¶ 7. Evidence of direct discrimination must "reflect directly the alleged discriminatory attitude and . . . bear directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (quoting *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 (2003)). In other words, direct evidence "prove[s] the existence of" discrimination "without any inference or presumptions." *O'Connor v. Consol. Coin Caterers Corp.*, 56 F.3d 542, 548 (4th Cir. 1995), *rev'd on other grounds* 517 U.S. 308, 116 (1996) (quoting *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993)). The above evidence, at best, reflects alleged disparate treatment, but it does not make plain any discriminatory viewpoint without additional "inference[s] or presumptions." The Court otherwise could find no evidence of direct discrimination when viewing the record most favorably to Calloway.

*Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)). *See also Herkert v. Bisignano*, 151 F.4th 157, 165 (4th Cir. 2025) (the altered employment condition must be "disadvantageous" to plaintiff). But when viewing the record most favorably to Calloway, no reasonable trier of fact could so conclude. Calloway asked the City to accommodate her high-risk pregnancy by not requiring her to wear a gun belt or vest or pursue suspects. To meet those requests, the City created a civilian position for Calloway *and* paid her the same salary. *See* ECF No. 19-8; ECF No. 19-3 ¶¶ 8–9. And when Calloway returned after she gave birth, the City promoted her, thus reflecting that the temporary assignment did not seem to disadvantage her career. ECF No. 19-4. On this record, no reasonable juror could conclude that Calloway was worse off because the City honored her requested accommodations. *Cf. Glunt v. GES Exposition Servs., Inc.*, 123 F. Supp. 2d 847, 864–65 (D. Md. 2000) (summary judgment denied in part where pregnant plaintiff was demoted with corresponding decrease in salary), *with Guzman v. City of New York*, 93 F. Supp. 3d 248, 257 (S.D.N.Y. 2015) (pregnant police officer who was required to wear uniform during pregnancy and did not experience decrease in wages did not suffer materially adverse change in the terms and conditions of employment).

Alternatively, even if Calloway could make the prima facie case, no evidence rebuts the legitimate nondiscriminatory reasons for the supposedly adverse action. The stated reason for Calloway's temporary reassignment was to accommodate her indisputably high-risk pregnancy. ECF No. 19-3 ¶ 4. The City could not meet the restrictions that Calloway's doctor had imposed without changing many of Calloway's job duties. ECF No. 19-3 ¶ 8. *See, e.g.*, *Tysinger v. Police Dep't of City of Zanesville,* 463 F.3d 569, 576 (6th Cir. 2006). Thus, the City had to temporarily reassign her to a civilian post.

Calloway, by contrast, has generated no evidence that the accommodations were a pretext for discrimination. To demonstrate pretext, a plaintiff must prove "*both* that the reason was false, *and* that discrimination was the real reason." *Adams v. Trustees of Univ. of N.C.- Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)) (emphasis in original). A plaintiff can carry her burden by showing "an employer's proffered nondiscriminatory reasons for the termination are inconsistent over time, false, or based on mistakes of fact." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019). On this point, however, Calloway is silent. Thus, the City is entitled to summary judgment on the Title VII pregnancy discrimination claim.

### B. Title VII Retaliation & Hostile Work Environment Claim (Count II)

Next, as to the retaliation claim, Calloway must adduce some evidence that she had engaged in activity protected by Title VII; that her employer took an adverse employment action against her; and that the two are causally connected. *Jenkins v. Gaylord Ent. Co.*, 840 F. Supp. 2d 873, 880 (D. Md. 2012) (quoting *Tasciyan v. Med. Numerics*, 820 F. Supp. 2d 664, 675 (D. Md. 2011)). The City argues that Calloway's sole "protected activity" was her January 12, 2023 notification of her intended formal charge with the EEOC. ECF No. 19-1 at 19. Thus, says the City, all actions predating January 12 could not have been retaliatory. *Id.*

Calloway responds that her requests for accommodations and for FMLA leave also amount to protected activity. ECF No. 21-1 at 23. Although it is not altogether clear that requests for accommodations constitute protected activity under Title VII, *Parker v. Children's Nat'l Med. Ctr., Inc.*, No. CV ELH-20-3523, 2021 WL 5840949, at *21 (D. Md. Dec. 9, 2021), even if they are, the retaliation claim still fails. When viewing the record most favorably to Calloway, nothing suggests that the City took any adverse action against her because she asked for such

accommodations. Rather, the evidence shows the City honored her accommodations request to the letter. And once Calloway returned to work, the City also restored her police powers and next promoted her. On this record, the Court is hard pressed to see how the City retaliated in response to her requested accommodation.

Calloway nonetheless obliquely suggests that a litany of supposed adverse actions is somehow tied to a separate set of acts which she views as protected activity. ECF No. 21-1 at 23–28. But she offers nothing to connect the claimed adverse actions to any predicate protected activity. Simply reciting a laundry list of bad things that happened during her temporary assignment alone cannot sustain the claim. When viewing the record most favorably to her, no evidence gives rise to the inference that her protected conduct triggered a retaliatory response.

Last, as to the harassment claim, the City rightly argues that no reasonable factfinder could conclude that Defendants created a sufficiently hostile workplace aimed at Calloway's pregnancy. ECF No. 19-1 at 18. A hostile work environment claim will proceed only if some evidence shows not only that the plaintiff experienced unwelcome conduct imputable to the employer and "aimed at a protected characteristic," but that the conduct was also "sufficiently severe or pervasive to alter the conditions of her employment." *See Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183–84 (4th Cir. 2001); *see also Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 299 (4th Cir. 2015). Importantly, the test for severity and pervasiveness is an objective one, considering the totality of the circumstances. *Evans v. Int'l Paper Co.*, 936 F.3d 183, 192 (4th Cir. 2019) (quoting *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008)). Thus, the trier of fact may look to the "frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered

with the employee's work performance." *Sunbelt Rentals*, 521 F.3d at 315 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Calloway argues that the City created a sufficiently hostile environment by (1) "questioning" her pregnancy; (2) putting her on three-days paid leave before her temporary duty assignments; (3) failing to give her a maternity uniform; (4) "revoking" her police powers, and (5) leading her to believe she had done all she needed to do to receive FMLA leave. ECF No. 21-1. None taken together or independently would permit a reasonable jury to find for Calloway.

First, no evidence supports that the City had "questioned" her pregnancy or ordered a "second opinion" as to whether she was pregnant. Rather, the evidence shows that the City required an independent examination to ensure its planned accommodations would address Calloway's medical needs. Thus, regardless of how many times Calloway casts the medical exam as a "second opinion" on her pregnancy, it was not, and any claimed associated "embarrassment" surrounding this point is not objectively reasonable.

Nor can a reasonable factfinder conclude that placing Calloway on three-days paid leave in advance of her temporary duty assignment was adverse to Calloway, let alone designed to create a hostile work environment. The unrebutted evidence shows that the City needed the days to confirm that its accommodations would adequately meet Calloway's medical restrictions. ECF No. 19-3 ¶ 6. The City also wanted to ensure that Calloway was *paid* even though she was not working. *Id*. The Court cannot fathom how a reasonable juror would conclude such efforts were an act of hostility aimed at Calloway's pregnancy.

Similarly, the City removed Calloway's police powers because it had to as part of accommodating her pregnancy-related work restrictions. Calloway's doctor made clear that throughout the pregnancy, Calloway could not wear her gun belt or duty vest, nor could she engage

in "pursuit" or lift over 20 pounds. ECF No. 19-8. This means, then, that the City could not allow Calloway to retain police powers and also accommodate her high-risk pregnancy. And as for not giving Calloway a maternity uniform, she, like other administrative positions, did not *need* a police uniform when she was assigned to a civilian desk. Nor could a reasonable juror conclude that the City's insistence on Calloway's compliance with the paperwork requirements necessary to obtain FMLA leave amount to pregnancy-based acts of hostility. Accordingly, when viewing the record most favorably to Calloway, summary judgment must be granted in the City's favor on the hostile work environment claim.

## IV. Conclusion

As explained above, Plaintiff Calloway has provided no evidence supporting the claims of pregnancy discrimination or harassment. Thus, the Court grants Defendants' motion for summary judgment on all claims. A separate order follows.

| | |
|---|---|
| 2/25/26 | /s/ |
| Date | PAULA XINIS |
| | United States District Judge |